SAMUEL, Judge.
This suit results from a collision involving two automobiles. Plaintiffs, the owner-driver of one of the cars and his automobile insurer, seek $293.88, the alleged damage sustained by the plaintiff vehicle. The sole defendant, the owner-driver of the other car, answered denying liability and reconvened against the individual plaintiff alone for pesrsonal injuries allegedly sustained by him in the accident. After trial there was judgment, on the main demand, in favor of the defendant therein, dismissing plaintiffs’ suit, and judgment, on the reconventional demand, in the amount of $1,000 in favor of plaintiff in recon-vention and against the defendant in re-convention. Plaintiffs in suit have appealed.
Hereinafter the owner-driver of the plaintiff car will be referred to simply as plaintiff and the defendant on the main demand will be referred to simply as defendant.
The collision took place shortly after dusk, when it was sufficiently dark to require the use of automobile lights, on the Metairie Road Overpass of the Expressway in the City of New Orleans. Both cars had been traveling north in their extreme right lane of the three lanes reserved for northbound traffic. The defendant automobile ran into the plaintiff vehicle which was stopped in the right lane because of a stalled automobile ahead of it in that lane. The right front of the defendant automobile struck the left side of the plaintiff car.
Only three witnesses testified at the trial: the plaintiff; a young lady who was a passenger in the front seat of his car; and the defendant. In addition, the record includes a medical report offered by the defendant and a police report and an estimated cost of repairing the plaintiff vehicle (totaling the amount in suit, $293.-88) offered by the plaintiff, all of which were stipulated.
Plaintiff testified: He was traveling about 45 miles per hour [1] when he saw the stalled car in the lane ahead of him. He stopped his vehicle on or near the crest of the overpass behind the stalled car. He was prevented from turning left into the middle northbound lane because of approaching traffic consisting of one vehicle which passed to his left and another car, the defendant’s, whose headlights he could see when it was about 100 yards away. The *424 defendant vehicle attempted to turn left to avoid the collision but while doing so it swerved to its right and collided with the plaintiff car. The headlights and rear lights of his car were on at all times. Plaintiff had no difficulty seeing the stalled vehicle ahead of him and stopping in ample time to avoid a collision with that automobile.
Plaintiffs testimony was substantially corroborated by the testimony of his passenger. She also stated that everything had happened “fast”, i. e., the plaintiff car had been stoppd a very short time when the collision occurred.
The defendant testified: While proceeding up the incline at a speed of approximately 45 miles per hour and looking straight ahead, he could not see the plaintiff car, which was stopped beyond the crest of the overpass, until the crest was reached. He first realized the plaintiff car was in his lane when he saw its two rear lights just about three or four car lengths away. He quickly looked in the rear view mirror for approaching traffic, saw nothing coming to his left, turned left and applied the brakes. Upon the application of brakes his automobile swerved into the side of the stopped plaintiff vehicle.
The accident report introduced in evidence by stipulation was made by a city policeman following his investigation at the scene of the collision. It states the plaintiff car had stopped behind a stalled vehicle which had run out of gasoline and, within seconds thereafter, the defendant driver attempted to go left around the plaintiff vehicle but lost control and struck the latter car. The report further states that although the stalled car (the vehicle which had run out of gasoline) was beyond the crest of the overpass, the stopped plaintiff automobile was visible to approaching traffic coming up the incline.
Even without placing any reliance on the police report, we are unable to find any negligence on the part of the plaintiff driver. Without that report the only evidence in the record relative to his actions (we note defendant’s testimony corroborates the fact that the lights on the plaintiff car were on) is the testimony given by his passenger and himself. That testimony establishes, without contradiction, his stopped position was necessitated by the stalled vehicle in his lane of travel and very shortly thereafter, during which time he was unable to move due to approaching traffic in the lane to his left, he was struck by the defendant car.
We reach the opposite conclusion regarding negligence on the part of the defendant driver. The duty of a motorist to look ahead and observe never ceases and he is held to have seen an object which, by the exercise of ordinary care and prudence, he should have seen in time to avoid a collision with that object; he is under a continuing duty to maintain a proper lookout and always must closely observe preceding traffic.[2] Whether defendant should have seen the stopped plaintiff automobile in time to avoid the collision is, of course, a question of fact dependent primarily upon whether or not the latter vehicle could or could not be seen by the defendant as he approached the crest of the overpass. Although the trial judge gave no reasons for judgment, it is possible he found as a fact that the defendant was unable to see the plaintiff vehicle until he reached the crest, too short a distance to enable him to avoid the accident. However, noting that this is a question of fact, a determination of which materially depends upon the police report and that the in *425 vestigating police officer did not testify,[3] our conclusion is that the defendant driver could have seen the stopped plaintiff vehicle in ample time to avoid the collision. His failure to observe the plaintiff car until it was only three or four car lengths away constitutes negligence which caused the accident.
The stipulation under which the police report was received in evidence states that the investigating police officer, if called, would testify in accordance with his report. As opposed to the three witnesses who gave testimony, that officer was completely disinterested. He arrived on the scene of the accident in less than an hour after it occurred and certainly was in a position to determine whether the plaintiff vehicle could be seen by the defendant as the latter was coming up the incline, an essential and important question in connection with the fact that the officer issued a citation to the defendant.[4]
Accordingly, we are of the opinion that the testimony of the plaintiff and his passenger, together with the police report received in evidence, establishes negligence on the part of defendant by a clear preponderance of the evidence.
For the reasons assigned, the judgment appealed from is annulled and reversed and it is now ordered that there be judgment, on the main demand, in favor of the plaintiffs, A. Herbert Levy, III and Travelers Insurance Company, and against the defendant, Dominico Graffagnini, in the sum of $293.88, together with legal interest thereon from date of judicial demand until paid, and that there be judgment, on the reconventional demand, in favor of defendant in reconvention, A. Herbert Levy, III, and against plaintiff in reconvention, Dominico Graffagnini, dismissing said re-conventional demand. All costs in both courts to be paid by the original defendant and plaintiff in reconvention, Dominico Graffagnini.
Annulled and reversed.

. 45 miles per hour is within the legal speed limit at the point where the accident happened.

. See Malone v. Hartford Insurance Company, La.App., 239 So.2d 697; Ardoin v. Travelers Insurance Co., La.App., 229 So.2d 426; Palmisano v. Thibodeaux, La.App., 219 So.2d 196; Volkswagen Insurance Co. v. Tamburello, La.App., 210 So.2d 136; Wagner v. Travelers Indemnity Co., La.App., 185 So.2d 289.

. Thus the rule that a finding of fact dependent upon the credibility of witnesses seen and heard by the trial judge can be reversed only for manifest error is not applicable. Since we are here concerned only with a written report we occupy the same position as the trial judge in the evaluation and acceptance or rejection of that report.

. Time of arrival on the scene and issuance of citation are included in the report.